IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FARHAD HOJATOLESLAMI,

    Plaintiff,                               No. CIV S-06-2715 DAD

    vs.

MICHAEL J. ASTRUE,                  ORDER
Commissioner of Social Security,[1]

    Defendant.
_____/

        This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the court will affirm the decision of the Commissioner of Social Security (Commissioner).

## PROCEDURAL BACKGROUND

        On June 23, 2003, plaintiff Farhad Hojatoleslami protectively filed an application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act), and on July 2, 2003, he applied for Social Security Disability Insurance benefits under Title II of the

---

[1] Michael J. Astrue, who became the Commissioner of Social Security on February 12, 2007, is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

Act. (Transcript (Tr.) at 51, 54-56.) In both applications, plaintiff alleged disability beginning October 4, 1999 when he injured his back in a fall at work.[2] (Tr. at 11, 14.) On or about July 25, 2003, plaintiff's right hand was injured when a car struck plaintiff while he was riding a bicycle. (Tr. at 15, 134-35.) Plaintiff's applications were denied by the Commissioner initially on October 10, 2003 and upon reconsideration on December 9, 2003.[3] (Tr. at 35-47.)

Through counsel, plaintiff submitted a timely request for a hearing before an administrative law judge (ALJ). (Tr. at 48.) A hearing was held on January 26, 2005. (Tr. at 209-46.) At counsel's request, a supplementary hearing was held before the same ALJ on January 19, 2006. (Tr. at 72, 247-72.) In a decision issued on June 22, 2006, the ALJ determined that plaintiff was not disabled through the date of the decision. (Tr. at 9-21.) The ALJ entered the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act through December 31, 2004.
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*) (Exhibit 2D/2).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, and residuals of right hand fracture (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light exertional work activity.

---

[2] Plaintiff filed two prior applications for SSI based on the same injury. His March 13, 2001 application was denied on medical grounds on July 6, 2001, and his April 9, 2002 application was denied on April 15, 2002 because of excess income. (Tr. at 11.)

[3] Plaintiff's hand fracture was also considered in the denials of plaintiff's applications initially and on reconsideration. (Tr. at 198-208.)

      6. The claimant is capable of performing past relevant work as a waiter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

      7. The claimant has not been under a "disability," as defined in the Social Security Act, from October 4, 1999 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. at 14-21.)

      On September 29, 2006, the Appeals Council denied plaintiff's request for administrative review of the ALJ's decision. (Tr. at 4-6.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on November 29, 2006.

## LEGAL STANDARD

      The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

      A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances three arguments in his motion for summary judgment. First, he asserts that the ALJ failed to credit the opinions of plaintiff's treating physicians without providing clear, convincing and legitimate reasons for not crediting those opinions. Second,

4

plaintiff contends that the ALJ rejected plaintiff's own statements regarding his impairments and symptoms, including pain, without providing clear and convincing reasons for doing so. Third, plaintiff argues that the ALJ either failed to properly assess plaintiff's residual functional capacity (RFC) and therefore erroneously found him capable of performing his past work as a waiter or the ALJ improperly found, in the alternative, that plaintiff not disabled based on the "grids." The court addresses these arguments below.

## I. Opinions of Plaintiff's Treating Physicians

It is undisputed that the medical opinions of treating physicians are entitled to special weight. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). However, the ALJ is not required to give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (rejecting a treating physician's conclusory, minimally supported opinion); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ may meet the Commissioner's burden of setting forth specific, legitimate reasons for giving less weight to the controverted opinion of a treating physician by (1) setting out a detailed and thorough summary of the facts and conflicting clinical evidence, (2) stating his interpretation of the evidence, and (3) making findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (citing Magallanes, 881 F.2d at 751). In developing the record and interpreting the evidence, the ALJ is not required to discuss every piece of evidence but must explain why

significant probative evidence has been rejected and must reach a decision that is supported by substantial evidence.  Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

        Here, plaintiff's argument concerns the ALJ's consideration of the opinions of Paul Handleman, D.O.  Plaintiff asserts that the ALJ failed to identify Dr. Handleman as a treating physician, failed to accurately summarize Dr. Handleman's treatment records, and failed to credit Dr. Handleman's opinions, all without any explanation.  Plaintiff contends that the ALJ's entire summary of Dr. Handleman's extensive treatment records consists of one reference to the doctor's June 20, 2000 report and a single reference to the doctor's treatment note from December 2000.

        Plaintiff's arguments miss the mark.  The ALJ's decision commences with a discussion of jurisdiction and procedural history, which concludes as follows:

> The claimant filed prior applications for Supplemental Security Income payments on March 13, 2001 and April 9, 2002 alleging an onset of disability of October 4, 1999 in each claim.  The March 2001 claim was denied on medical grounds on July 6, 2001 and the claimant did not pursue appeal.  The April 2002 claim was denied on April 15, 2002 based upon the claimant having excess income and not qualifying for SSI.  <u>Reopening of the prior claim is unwarranted (20 CFR 416.1488), and any reference to medical documents are for historical purposes only and are not an intent to reopen or revise the prior applications.</u>

(Tr. at 11 (emphasis added).)  The court finds that this aspect of the ALJ's decision, which has not been challenged, explains the ALJ's approach to Dr. Handleman's opinions.

        Dr. Handleman began treating plaintiff on October 5, 1999, the day after he was injured, and treated him extensively through December 1999.[4]  (Tr. at 103-33.)  In progress reports through October 27, 1999, Dr. Handleman indicated that plaintiff should remain off

---

[4] Between October 1999 and March 2000, Dr. Handleman also referred plaintiff to several physicians for evaluation and treatment:  Dr. Grollmus (tr. at 101 & 121-22), Dr. Zwerin (tr. at 105-07), and Dr. Szabo (tr. at 98-99).

6

work.  (Tr. at 118, 123, 125, 129, 132.)  On November 8, 1999, Dr. Handleman indicated that plaintiff could return to work, with restrictions.  (Tr. at 115.)  However, three days later, plaintiff complained of increasing pain and stated that he thought he "did too much in p[hysical] t[herapy]."  (Tr. at 114.)  Dr. Handleman returned plaintiff to "off work" status, and plaintiff remained in that status through the end of the year.  (Tr. at 103, 111, 113.)

During 2000, Dr. Handleman saw plaintiff approximately once a month through the month of August.  (Tr. at 85-102.)  Through May 10, 2000, Dr. Handleman continued to find that plaintiff should be off work until rechecked.  (Tr. at 91, 93, 95.)  On June 15, 2000, Dr. Handleman prepared a report finding plaintiff's condition permanent and stationary.  (Tr. at 151-53.)  Dr. Handleman at that time opined that plaintiff could not return to his normal and customary occupation and listed the following work restrictions based on the nature and course of plaintiff's injury:

    1.  No repetitive bending or twisting.

    2.  Light lifting only; maximum 20 pounds from knee level and maximum 5-10 pounds from floor level (occasionally only).

    3.  No crawling, squatting, or climbing.

    4.  Frequent position changes to avoid sitting for more than 60 minutes at a time.

(Tr. at 152-53.)  On July 5, 2000, Dr. Handleman signed a form reiterating that plaintiff's condition was permanent and stationary.  (Tr. at 86-87.)  After approving medications in August 2000, Dr. Handleman next saw plaintiff on December 14, 2000, when plaintiff reported that he had aggravated his symptoms by attempting swimming.  (Tr. at 85.)  Dr. Handleman recommended neurosurgical evaluation, medications, continued vocational rehabilitation, and follow up.  (Tr. at 81-84.)

The administrative record does not include any treatment notes or opinions by Dr. Handleman between December 14, 2000, and April 15, 2002, although it appears that during that period of time Dr. Handleman authored an opinion, was deposed in connection with plaintiff's

worker's compensation proceedings, and recommended a psychological or psychiatric evaluation for plaintiff in April 2001. (Tr. at 78-79.) A treatment note dated April 15, 2002 indicates that Dr. Handleman saw plaintiff regarding medication, learned that plaintiff was about to settle his worker's compensation claim, recorded plaintiff's condition as stable, and prescribed medication. (Tr. at 77.) On the same date, Dr. Handleman signed a work status report form indicating that plaintiff's condition was permanent and stationary. (Tr. at 76.)

The final records of Dr. Handleman's treatment of plaintiff are dated April 3, 2003. (Tr. at 74-75.) A work status report form indicates that plaintiff's condition was permanent and stationary. (Tr. at 74.) A worker's compensation progress report form indicates that plaintiff complained of continued pain, with flare-ups about five times per month. (Tr. at 75.) Objective findings indicated lumbar range of motion/flexion at 70 plus degrees, extension 20 degrees, and rotation 70 degrees.[5] The diagnosis was chronic back pain and left lower extremity radiculitis.[6] The treatment plan was to continue plaintiff on Ultram along with Tylenol. In the work status section of the form, Dr. Handleman entered "P & S." (Id.)

As the foregoing summary reveals, Dr. Handleman's treatment of plaintiff occurred almost entirely prior to July 6, 2001, the date on which the Commissioner denied plaintiff's first application for SSI.[7] The records of Dr. Handleman's treatment of plaintiff in

---

[5] Dr. Handleman's findings almost three years earlier, based on a physical examination of plaintiff on June 9, 2000, noted "lumbar flexion to 70 degrees . . . , rotation to 80 degrees bilaterally, right side bending to 20 degrees, and left side bending to 30 degrees." (Tr. at 151.)

[6] Dr. Handleman's June 15, 2000 diagnosis was (1) low back pain, left lower extremity radiculitis, lumbar spine degenerative disc disease with L5-S1 disc protrusion; and (2) urinary incontinence and erectile dysfunction secondary to nerve root injury, improved. (Tr. at 152.)

[7] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401(h), while Supplemental Security Income is paid to disabled persons with low income, 42 U.S.C. § 1382. Both programs define disability as inability "to engage in any substantial gainful activity" due to a "medically determinable physical or mental impairment" that can be expected to result in death or last at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The same five-step sequential analysis governs eligibility for benefits under both programs. 20 C.F.R. §§ 404.1520 & 416.920. See also Yuckert, 482 U.S. at 140.

1 April 2002 and April 2003 are comprised of brief treatment notes and opinions supported by
2 minimal clinical findings.  On this record, it is evident that the ALJ considered Dr. Handleman's
3 pre-July 2001 treatment records and opinions solely for their historical value and that the ALJ did
4 not overlook any probative evidence post-July 2001, either from plaintiff's primary treating
5 physician or from the other physicians who treated plaintiff on referrals from Dr. Handleman in
6 1999 and 2000.  The posture of the case did not require the ALJ to give specific reasons for not
7 crediting opinions rendered prior to July 2001, and the brief and conclusory nature of the April
8 2003 opinion did not require the ALJ to credit that opinion or give it greater weight than the
9 opinions rendered by examining physicians on September 22, 2003, and May 18, 2005.

10     Plaintiff argues that the ALJ should have rejected the opinion of Steve McIntire,
11 M.D., who conducted a comprehensive neurologic evaluation of plaintiff on May 18, 2005,
12 because the opinion is "completely at odds with the limitations assessed by Dr. Handleman" and
13 "inconsistent with all the other opinions of record." (Pl.'s Mot. for Summ. J. at 34 & 36.)  The
14 court's review of the administrative record reflects otherwise.

15     With regard to limitations assessed by Dr. Handleman, plaintiff appears to be
16 referring to Dr. Handleman's June 20, 2000 report, wherein Dr. Handleman assessed the
17 following limits:  no repetitive bending or twisting; light lifting, with a maximum of 20 pounds
18 from knee level and a maximum of 5-10 pounds from floor level occasionally only; no crawling,
19 squatting, or climbing; and frequent position changes to avoid sitting for more than 60 minutes at
20 a time. (Tr. at 153.)

21     After examining plaintiff on December 10, 2001, Dr. Warbritton observed that
22 plaintiff was in no acute discomfort and sat comfortably throughout the 45-minute interview and
23 examination. (Tr. at 160.)  Dr. Warbritton diagnosed lumbar strain with no objective evidence
24 for lumbar radiculopathy and "noted that there was some symptom magnification evident upon
25 physical examination." (Tr. at 161, 163.)  In Dr. Warbritton's opinion, plaintiff could not
26 /////

perform heavy work and was therefore unable to return to his usual job duties as a waiter as he had performed those duties at the Meadow Club. (Tr. at 155.)

On September 22, 2003, Dr. Bermudez examined plaintiff and diagnosed a history of chronic low back pain and a recent fracture of the right hand. (Tr. at 139.) Her assessment was that plaintiff should be able to stand or walk for 4 hours intermittently and sit for 6 hours intermittently in an 8-hour day, should avoid lifting anything over 10 pounds until his right hand healed, and should be able to perform occasional postural activities but should not climb ladders or scaffolds or work at heights. (Tr. at 139-40.) Dr. Bermudez expected plaintiff's functional restrictions to improve when his right hand healed. (Tr. at 140.)

On May 18, 2005, Dr. McIntire performed a comprehensive neurologic evaluation of plaintiff. Dr. McIntire reviewed prior evaluations, reports, progress notes, imaging results, and a recent nerve conduction study of plaintiff's right upper extremity. (Tr. at 182-86.) Dr. McIntire observed that plaintiff walked differently at different times during the examination and sometimes exaggerated symptoms. (Tr. at 183, 185.) Dr. McIntire diagnosed mild osteoarthritis of lumbar spine and a history of fracture of the fifth digit of the right hand. (Tr. at 185.) He found that plaintiff suffered a mild loss of range of motion of the lumbar spine and slight tenderness of the right hand. (Tr. at 185-86.) He found as follows regarding plaintiff's functional capacity:

> He should avoid extremely heavy lifting or carrying activities, such as lifting or carrying more than 20 pounds frequently or 40 pounds occasionally. He should not engage in more than occasional power gripping activities with the right hand. There are not otherwise manipulative limitations. The current exam does not itself point to limitations in terms of time sitting, standing or walking. There are not postural, environmental, communicative or cognitive limitations suggested by the present exam.

(Tr. at 186.)

The four medical opinions described above span a period five years, during which time plaintiff suffered a new impairment that healed. Dr. McIntire's opinion in 2005 necessarily

differs from opinions rendered in 2000, 2002, and 2003 due to the passage of time and the evolution of plaintiff's conditions, but his opinion is not "completely at odds with the limitations assessed by Dr. Handleman" or "inconsistent with all the other opinions of record" as claimed by plaintiff. The court finds that the ALJ properly considered the opinions of plaintiff's treating physician as well as the opinions of the three examining physicians. The ALJ's decision is adequately supported by evidence on the record and is not founded on an improper rejection of the opinions of a treating physician.

**II. Plaintiff's Own Statements Regarding His Impairments and Symptoms**

Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his symptoms merely because the symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Rather, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). See also Morgan, 169 F.3d at 599; Reddick, 157 F.3d at 722; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985)).

In evaluating a claimant's subjective testimony regarding pain and the severity of the claimant's symptoms, the ALJ may consider the presence or absence of supporting objective medical evidence, along with other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285. The ALJ may rely, in part, on his or her own observations. Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989). However, the ALJ cannot substitute such observations for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

Questions of credibility and resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. The determination of

credibility is considered a function of the ALJ acting on behalf of the Commissioner. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An ALJ's assessment of credibility should, in general, be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989). Absent affirmative evidence of malingering, the reasons for rejecting the claimant's testimony must be clear and convincing. Morgan, 169 F.3d at 599.

Here, plaintiff argues that objective medical evidence documented his lumbar spine degenerative disease, low back pain with left lower extremity radiculitis and L5-S1 disc protrusion, and pareus/paralysis of his right hand and that the ALJ improperly rejected plaintiff's testimony regarding his symptoms. Plaintiff admits that some of the examining physicians suggested that he might be exaggerating some of his symptoms, but he argues that none of his treating physicians suggested that he was malingering. In plaintiff's view, the ALJ was required to credit all of plaintiff's testimony because the ALJ offered no clear and convincing reasons for rejecting any of that testimony. (Pl.'s Mot. for Summ. J. at 39-41.)

Plaintiff's description of the objective medical evidence of his impairments is based on Dr. Handleman's diagnosis in June 2000 and treatment notes from Molina Medical Center in July 2004. (See tr. at 152, 168 & 170.) The ALJ determined, however, that plaintiff suffers from only two severe impairments: degenerative disc disease of the lumbar spine[8] and residuals of right hand fracture. (Tr. at 14.) The court finds in the ALJ's detailed discussion of these two impairments at steps three and four of the sequential analysis clear and convincing

---

[8] The ALJ did not identify left lower extremity radiculitis as a separate impairment or include it in his description of plaintiff's back impairment. (Tr. at 14,15.) In his 2002 report, Dr. Warbritton had diagnosed lumbar strain, moderate and chronic, but expressly found no objective evidence for lumbar radiculopathy. (Tr. at 161.) In September 2003, Dr. Bermudez diagnosed history of chronic low back pain and noted an impression of referred pain into the left leg. (Tr. at 139.) In 2005, Dr. McIntire noted that plaintiff was "not describing pains in a radicular pattern" and diagnosed mild osteoarthritis of the lumbar spine. (Tr. at 182, 185.)

reasons for determining that plaintiff's own statements concerning the intensity, duration and limiting effects of his symptoms were not entirely credible. (Tr. at 15-20.)

With regard to the condition of plaintiff's right hand, the ALJ noted that in July 2004, one year after the injury, x-rays of the right wrist and right hand showed minimal post-traumatic deformity of the right fifth metacarpal, with no evidence of acute fracture, and only minor degenerative changes at the base of the fourth and fifth metacarpal bones. (Tr. at 16, 173.) The ALJ also noted that in October 2004, plaintiff complained of right neck and right upper extremity pain and sensory symptoms, but an EMG showed no evidence of cervical radiculopathy and a conduction study showed no evidence of peripheral neuropathy in plaintiff's right upper extremity. (Tr. at 16, 176-77.) The x-rays of plaintiff's right hand on May 18, 2005, taken in connection with Dr. McIntire's evaluation, showed no fractures, a slight deformity to the base of the fifth metacarpal bone suggestive of an old fracture which is healed, a small amount of spurring at the head of the first metacarpal bone, joint spaces well maintained without significant narrowing, no erosions, and a small amount of spurring at the base of the third proximal phalanx and head of the third metacarpal bone. (Tr. at 191.) Yet plaintiff testified at the hearing in January 2005 that his right hand is stuck in a permanent fist, that it is too painful to open the right hand voluntarily except when he is in the shower and hot water is running over the hand, and that otherwise he can only open it by using his left hand to force the right hand open. (See tr. at 231-35.) The ALJ's decision sets forth at length Dr. McIntire's testimony at the supplementary hearing, including his testimony that plaintiff did not present with any complaint related to his hand in May 2005 and that the symptoms now asserted by plaintiff at both hearings would not be explained by or expected from the x-rays, the EMG, and the nerve conduction studies reviewed by Dr. McIntire. (Tr. at 16-18, 266-69.) The objective medical evidence regarding plaintiff's right hand provides no support for the symptoms alleged by plaintiff. Thus, the ALJ's decision demonstrates clear and specific reasons for not fully crediting plaintiff's statements regarding those symptoms.

Similarly, the ALJ's decision provides clear and convincing reasons for finding that plaintiff's testimony concerning his back was not fully credible. Those reasons include the exaggeration of symptoms noted by Dr. Warbritton in 2002 and Dr. McIntire in 2005. (Tr. at 16.) The ALJ's decision addresses in great detail the evidence of exaggeration noted by Dr. McIntire. (Tr. at 16-17.) The ALJ's decision also notes that Drs. Eskander and Tambellini, who evaluated plaintiff's RFC on the basis of Dr. Bermudez's opinion in 2003, found that plaintiff's alleged functional limitations were not totally supported by the objective medical evidence and were not fully credible. (Tr. at 19, 141-48.) After noting plaintiff's testimony that he could do virtually nothing, the ALJ found that plaintiff's medically determinable impairments could cause symptoms of pain and fatigue but that the evidence of record did not support plaintiff's statements concerning the intensity and duration of his symptoms or concerning the limiting effects of those symptoms. (Tr. at 19.) In this regard, the ALJ cited the findings of plaintiff's own treating physicians concerning the expected duration of plaintiff's back impairment, their recommendations concerning plaintiff's treatment and therapy, plaintiff's attempt to pass a police academy physical training test a month after his back injury, medical evidence of improvement of the impairment over time, Dr. Handleman's advice to plaintiff to continue with vocational rehabilitation in December 2000, Dr. Warbritton's determination in 2002 that plaintiff was only precluded from doing heavy work, and Dr. Bermudez's opinion in 2003 that plaintiff's capacity to work would increase when his right hand healed. (Tr. at 20.)

The court finds that the ALJ considered plaintiff's subjective symptoms to the extent that they were consistent with objective medical evidence. See 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."); see also 20 C.F.R. § 416.929(a) (same). To the extent that the ALJ rejected plaintiff's testimony, the reasons for doing so are clear and convincing.

/////

### III. Plaintiff's RFC and Ability to Perform Past Work

At step four of the sequential evaluation, the ALJ must determine whether the claimant retains the residual functional capacity to perform his past relevant work or any other work that exists in the national economy. A claimant's RFC is the most that he can still do despite his limitations and is an assessment based on all the relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1); Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). It is the duty of the ALJ, not the claimant's physicians, to determine RFC at the administrative hearing stage. 20 C.F.R. §§ 404.1546(c) & 416.946(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). If the claimant is capable of performing past work, he is not disabled.

Here, the ALJ determined that plaintiff has the RFC to perform light work and therefore can perform his past relevant work as a waiter because that job, as generally performed, is light work. (Tr. at 20, 57, 67.) Although the ALJ did not adopt the work restrictions imposed by Dr. Handleman in his June 2000 report, those restrictions are consistent with the ALJ's determination that plaintiff can perform light work: no repetitive bending or twisting; light lifting only (maximum 20 pounds from knee level and maximum 5-10 pounds from floor level occasionally); no crawling, squatting, or climbing; frequent position changes to avoid sitting more than 60 minutes at a time. (Tr. at 153.) The regulations provide that light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and may require either a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b) & 416.967(b).

The job plaintiff was performing at the Meadow Club when he suffered his back injury, however, included duties beyond those of a waiter in a restaurant. Prior to his employment at the golf club's restaurant, plaintiff had worked as a cook at Denny's and had opened a restaurant of his own. (Tr. at 215-17.) Because of his prior experience, plaintiff

worked as a waiter at the Meadow Club but also did "everything" in the kitchens.  (Tr. at 217.)
On October 4, 1999, he was in the club's small kitchen by the swimming pool, alone, "pulling it
apart" and cleaning it up so that it could be closed for the season.  (Tr. at 218, 227.)  He was
standing on top of the stove trying to pull a filter from the hood when he fell backwards off the
stove.  (Tr. at 227.)  Dr. Warbritton noted in his evaluation in 2002 that plaintiff frequently
performed heavy lifting activities during the course of his customary job duties at the Meadow
Club and therefore plaintiff could not "return to his usual and customary job duties as a waiter for
the Meadow Club."  (Tr. at 155.)

        The ALJ considered all relevant evidence in the record and reasonably found that
plaintiff has the RFC to perform work as a waiter as that job is generally performed.  The ALJ
specified that plaintiff should avoid heavy lifting or carrying activities that would exceed the
requirements of light work.  See Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (requiring
the ALJ to make "specific findings as to the claimant's residual functional capacity, the physical
and mental demands of the past relevant work, and the relation of the residual functional capacity
to the past work"); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (finding the claimant's
own testimony about past work highly probative); Villa v. Heckler, 797 F.2d 794, 797-98 (9th
Cir. 1986) (holding that the ALJ "must ascertain the demands of the claimant's former work and
then compare the demands with his present capacity").  The court finds that the ALJ's
determination regarding plaintiff's RFC is supported by substantial evidence, and plaintiff has
not demonstrated that he is unable to perform work as a waiter, excluding duties not typically
included in such work.  See Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); see also
Smith v. Barnhart, 388 F.3d 251, 253 (7th Cir. 2004) ("The issue is not whether the applicant for
benefits can return to the precise job he held . . . but whether he can return to a 'job' he held that
exists at other employers."); Evans v. Shalala, 21 F.3d 832, 834 (8th Cir. 1994) (a finding of not
disabled is appropriate where "the claimant could have performed his past relevant work as it is
usually performed in the national economy"); Social Security Ruling 82-61 ("[O]n the other hand

an applicant who 'cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy should not be found to be disabled.")

**CONCLUSION**

The court's scope of review in considering decisions granting or denying Social Security benefits is limited. Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979) ("Congress has mandated a very limited scope of judicial review of the Secretary's decisions granting or denying Social Security disability benefits.") It is not the court's role to re-weigh the evidence or substitute its own judgment for the Commissioner's. Winans v. Bowen, 853 F.2d 643, 644-45 (9th Cir. 1987). If there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ may resolve a conflict among experts so long as there is "more than one rational interpretation of the evidence." Sprague, 812 F.2d at 1230. See also Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision").

The record in this case contains some evidence of disability. However, there is substantial evidence of nondisability. The ALJ considered all of the evidence and set forth a rational interpretation of that evidence. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."). Thus, in finding plaintiff capable of performing his past relevant work as a waiter, as that job is generally performed, the ALJ properly discharged his responsibilities of determining credibility and resolving any conflicts or ambiguities in the testimony. See Magallanes, 881 F.2d at 750.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. Defendant's cross-motion for summary judgment is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: March 4, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/hojatoleslami2715.ord